(Not for Publication)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|   |   |   |
|---|---|---|
| IN RE: | : | Civil No. 97-5127 (RBK) |
| BAYSIDE PRISON LITIGATION | : | **OPINION** |

**KUGLER**, United States District Judge:

Presently before the Court are two motions by all defendants ("Defendants") for summary judgment, one against Plaintiff Jose Baez ("Baez") and the other against Plaintiff David Kelly ("Kelly"). This lawsuit, brought pursuant to 42 U.S.C. § 1983, stems from events alleged to have taken place at Bayside State Prison ("Bayside") in July, August, and September of 1997. For the reasons set forth below, this Court will grant Defendants' motion for summary judgment against Baez and dismiss their motion against Kelly, who is no longer a party to this case.

**I.    BACKGROUND**[1]

During July, August, and September of 1997, Bayside experienced a "lockdown" following the murder of Senior Corrections Officer Fred Baker by an inmate. The plaintiffs in this lawsuit were inmates at Bayside during this lockdown who allege that prison officials

---

[1] As the parties and this Court are intimately familiar with the factual background underlying this ten-year-old case, this Opinion will contain only a brief recitation of relevant facts.

1

violated their civil rights during this time period.

Baez alleges that officers at Bayside assaulted him on July 31, 1997. He remained incarcerated at Bayside until October 24, 1997, when he was transferred to Northern State Prison. Eight months later, Baez was transferred again to Riverfront State Prison. He was there just two weeks before he was moved to New Jersey State Prison, where he remained incarcerated until September 14, 2001.

Defendants filed their motion for summary judgment against Kelly on September 30, 2007 and against Baez the following day. Baez opposed Defendants' motion; however, Kelly did not. This Court dismissed Kelly from this case on January 14, 2008 after he failed to respond to an Order to Show Cause why his case should not be dismissed due to his failure to comply with this Court's October 5, 2007 Order requiring him to return to Plaintiffs' counsel a completed opt-in/opt-out form. As such, Defendants' summary judgment motion against Kelly is moot and will be dismissed.

## II. STANDARD FOR SUMMARY JUDGMENT

In both motions, the defendants have moved for summary judgment pursuant to Fed. R. Civ. P. 56. Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

**III.  DISCUSSION**

Defendants have moved for summary judgment against Baez, claiming that he failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C. § 1997e(a). The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [§ 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Since this Court's last decision regarding exhaustion in this case, the Supreme Court decided Woodford v. Ngo, 126 S. Ct. 2378 (2006), which alters this Court's analysis of the issue of exhaustion.

A.  Requirement of Proper Exhaustion

In its prior opinions in this case, this Court outlined the showing required to prevail on a summary judgment motion for failure to exhaust. The defendant must establish that there was an administrative remedy available to the prisoner through which a prison official had the power to take some action in response to the subject matter of a prisoner's complaint. See In Re Bayside Litig., No. 97-5127, Opinion of June 9, 2004 ("Gerson"). If the defendant establishes that prison officials had the power to respond to the subject matter of the prisoner's complaint, then the plaintiff will be held to the exhaustion requirement. Id. Because it is an affirmative defense in the Third Circuit, the burden of proving failure to exhaust rests always with the defendant. Ray v. C.O. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

The foregoing propositions endure post-Woodford; one important component of the Court's previously employed analysis, however, does not. Drawing from the Seventh Circuit, this Court stated that the time the plaintiff's complaint is filed is the only relevant point for determining whether an administrative remedy was available under the PLRA. Witzke v. Femal, 376 F.3d 744, 750 (7th Cir. 2004). Witzke states that when deciding whether an individual is a prisoner within the meaning of the PLRA, a court "must look to the status of the plaintiff at the time he brings his suit." Id. This Court extended that rule, finding that when determining what administrative remedies are available to a plaintiff, a court must look exclusively to the plaintiff's situation at the time he filed his lawsuit. See In Re Bayside Litig., No. 97-5127, Opinion of October 21, 2004 ("White"). Under this analysis, the only administrative remedies relevant to the inquiry for prisoners like Baez, who were transferred from Bayside before they joined the lawsuit, are any that may have been available at the institution where the plaintiff was housed on the date he filed his complaint. While the Seventh Circuit's rule cited in Witzke is

4

undisturbed by Woodford, see Koger v. Bryan, No. 05-1904, 2008 WL 1821311, at *10 n.8 (7th Cir. 2008), this Court's extension of that rule is no longer valid.

In Woodford, the plaintiff prisoner sued in federal court after his administrative grievance was denied as untimely and that decision was administratively affirmed. The prisoner plaintiff argued that in those circumstances, no administrative remedies were available to him, and thus the Court should deem him to have satisfied the PLRA exhaustion requirement. The Court held that untimely or otherwise procedurally deficient attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirement. Id. at 2382. As the Third Circuit has explained, "[t]he PLRA requires 'proper exhaustion,' meaning that the prisoner must comply with all the administrative requirements and not merely wait until there are no administrative remedies 'available.'" Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007) (citing Woodford, 126 S. Ct. at 2387).

Consequently, it is impermissible to limit the scrutiny of exhaustion to only those administrative remedies available at the institution where a plaintiff was located on the day he filed his complaint. Such a limitation would permit a plaintiff who was transferred to a new institution after an incident to avoid the duty to properly exhaust the administrative remedies available to him in his prior institution. Indeed, courts have found that Woodford forecloses this possibility. See Ruggiero v. County of Orange, 467 F.3d 170 (2d Cir. 2006) (affirming grant of summary judgment against plaintiff due to improper exhaustion where he did not file administrative appeal because prison had transferred him to another facility pursuant to his request); Hendricks v. Barnes, No. 06CV799, 2007 WL 2257565, at *2 (M.D.N.C. Aug. 3, 2007) (stating "a plaintiff will not be excused from exhaustion because he is no longer at the facility

5

where the complained of incident occurred"). Baez contends that authorities at the prisons to which he was transferred had no authority to respond to an administrative complaint concerning conditions at Bayside. If that was so, then ignoring the administrative remedies available at Bayside and looking only to those that existed when he joined the lawsuit would allow Baez to circumvent the PLRA exhaustion requirement by "wait[ing] until there are no administrative remedies available." See Williams, 482 F.3d at 639. Accordingly, the Court will begin by assessing the administrative remedies at Bayside in late 1997.

B. Administrative Remedies Available at Bayside

This Court has already held that the complaint process outlined in the Bayside Prison Inmate Handbook constitutes an available administrative remedy under the PLRA. See Gerson, at 18. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 127 S. Ct. 910, 922-23 (2007). Baez acknowledges that he did not file an administrative remedy form while at Bayside. As a result, the Court must look to the procedures outlined in Bayside's Handbook to assess whether that omission means he did not properly exhaust his administrative remedies.

Significantly, the process outlined in the Bayside Handbook does not impose a deadline for reporting an incident. Rather, it states that inmates are encouraged to utilize an Administrative Remedy Form, or "ARF," to voice complaints regarding conditions within the jurisdiction of the institution. Inmates obtain ARFs from the "housing unit officer," and submit a completed forms to "Social Services" or a "Social Worker." The only provision concerning timing involves the timing for a response from prison officials: "Inmates are encouraged not to contact staff members for a response unless a response is not received within 13 working days of

receipt of the ARF by social services." The Handbook states further that the process is complete after a "department head" or "Captain" resolves the complaint. If the department head or Captain fails to resolve the inmate's complaint, the response of the "Assistant Superintendent" assigned to the inmate's area constitutes the "last step" in the administrative process. Complaints that are disposed of at the "last step" are not accepted for further administrative consideration.

Baez did not fail to properly exhaust his administrative remedies because Bayside's administrative process contains no time limit for filing an AFR. Baez did not file an AFR between the date of his alleged assault on July 31, 1997 and his transfer to Northern State Prison on October 24, 1997; however, under Bayside's administrative process, he did not need to. Had he remained at Bayside, he could have filed an AFR regarding the alleged assault after October 24, 1997. This absence of a deadline distinguishes this case from Woodford, which involved an inmate who submitted an administrative complaint outside the time allowed under his prison's policy. See Woodford, 126 S. Ct. at 2387. Therefore, the Court must examine the availability of administrative remedies at the facilities to which Baez was transferred.

    C.    Administrative Remedies Available at Northern State and New Jersey State Prisons

The evidence presented by Defendants shows that Baez did have administrative remedies available after he left Bayside. To constitute an available administrative remedy, a grievance procedure must enable the appropriate prison authorities to provide relief or to take action in response to a prisoner's grievance. Booth v. Churner, 532 U.S. 731, 736 n.4 (2001). Additionally, an administrative remedy need not be formally adopted to be "available." Concepcion v Morton, 306 F.3d 1347, 1354 (3d Cir. 2002). The exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered by the administrative

procedures." Booth, 532 U.S. at 741 (2001); see also Nyhuis v. Reno, 204 F.3d 65, 78 (3d Cir. 2000) ("[T]he PLRA amended § 1997e(a) in such a way as to make exhaustion of all administrative remedies mandatory—whether or not they provide the inmate-plaintiff with the relief he says he desires in his federal action."). Moreover, the Third Circuit has found that transfer to another facility does not excuse the PLRA's exhaustion requirement. See Williamson v. Wexford Health Sources, Inc., 131 F. App'x 888, 890 (3d Cir. 2005) (affirming grant of summary judgment for failure to exhaust against plaintiff where plaintiff was transferred to a different prison after filing administrative claim, which plaintiff did not appeal).

Defendants have submitted uncontroverted evidence that the grievance procedures at both Northern State and New Jersey State prisons would have allowed prison officials to take action in response to a complaint by Baez regarding an incident at Bayside. Unlike the Bayside Handbook, which states "[c]omplaints not relevant to conditions within the jurisdiction of Bayside State Prison or that do not affect the complainant personally, shall not be considered," the inmate handbooks from Northern State and New Jersey State prisons do not include any such limiting language. Indeed, the New Jersey State Prison handbook explicitly delineates the types of complaints excluded from its administrative grievance procedures, and that list does not include complaints stemming from incidents at other institutions. Furthermore, Frank Pendolino, who was an executive assistant at Northern State Prison at the time Baez was incarcerated there, testified that Northern State Prison's procedure for handling a complaint relating to an incident at another facility was for prison officials to accept the complaint and respond by directing the inmate to contact the other prison. (Defs.' Mot. Summ. J. Ex. A at 19-20, 35.) Similarly, Assistant Superintendent Donald Mee testified that, while the New Jersey State Prison's

8

administrative grievance procedure primarily handled complaints concerning that prison, "if an inmate were to raise an issue . . . claiming that an incident happened at another facility . . . we would certainly investigate that." (Id. Ex. B at 68-69.) Plaintiffs offer no contradictory evidence. Therefore, Baez had administrative remedies available to him, of which he declined to take advantage. See Concepcion, 306 F.3d at 1354 (noting that although effectiveness of grievance procedures outlined in prison handbook was "unclear," there was "no doubt that it is 'available' to the plaintiffs").

Baez asserts several other arguments against summary judgment. He contends that Defendants should be equitably estopped from raising the affirmative defense of failure to exhaust because Baez's fear of retaliation rendered the remedies at Bayside unavailable. Barring estoppel, Baez argues that the special circumstances that existed at Bayside in late 1997 should excuse him as well as all other inmates of Bayside, for not filing an ARF prior to bringing suit. Baez points out that he did write a letter to Internal Affairs after August 1997, which given the threatening environment, should suffice as a substitute for an internal ARF.

Even assuming that circumstances at Bayside during the relevant time period did render Bayside's administrative remedy process effectively unavailable, Baez was removed from that environment and could have filed an administrative complaint thereafter. Baez has not alleged that circumstances at Northern State or New Jersey State prisons made him fearful of retaliation. Therefore, Baez failed to take advantage of available administrative remedies prior to joining this suit, and Defendants are entitled to summary judgment against him.

V.  **CONCLUSION**

Based on the foregoing reasoning, this Court will grant Defendants' motion for summary

judgment against Baez.  The Court will dismiss Defendants' motion for summary judgment against Kelly, since he has been dismissed from this case.  An accompanying Order shall issue today.


Dated:  5-19-08                                                           s/ Robert B. Kugler
                                                                          ROBERT B. KUGLER
                                                                          United States District Judge